Our next case for argument this morning is Houlihan v. Chicago May it please the Court You might want to wait a little Mr. Kajic Thank you, Your Honor May it please the Court, Counsel, Your Honors My name is Jonathan Kajic and I represent the 11 plaintiff appellants in this case The plaintiffs are City of Chicago police officers who formerly worked in a position titled Police Officer Assigned as Security Specialist The plaintiffs worked protecting former Mayor Daley in that position We are here today because the plaintiffs were unlawfully removed from their positions as security specialists due to legal, racial, and political motivations Plaintiffs' claims originally arose in two fronts There were political claims and racial claims brought under the Shackman decrees Sections 1981 and 1983, as well as Title VII Plaintiffs are appealing three general types of rulings in this case that were made in the district court First, plaintiffs are appealing the district court's summary judgment decision with respect to the qualified immunity decision made for defendants Hillard and Thompson as well as the decision to dismiss plaintiffs Nolan, Olson, and Roman Why is the position of security specialist not inherently a confidential position for which political loyalty can be considered? I mean, regardless of how the position is described isn't it a matter of common sense that these officers will be working in close proximity with the mayor and be in a position to hear high-level, sensitive conversations? So there are two areas that I would like to respond to your question First, the city made the determination through the Shackman decrees to make this a Shackman-protected position So there's a hiring plan in place which was titled Department Notice 7-47 where the city of Chicago specifically noted for all hiring officials in this case that politics could not be used for the position So in that regard, any official who was hiring or making any employment decision with regard to a security specialist had to read through the hiring process and specifically had to sign what was called a hire certification form and in that hire certification form they were attesting under the penalty of perjury that there were no political factors used in the employment process for these security specialists So any reasonable state actor, as the case law holds, that was reviewing this position Mr. Counsel, I wish you would address my colleague's question which concerns the merits of your 1983 claim It's a problem that occurs to me too and I would appreciate receiving your response to it rather than just saying they've taken a certain classification for purposes of the Shackman decree I apologize. Let me speak to the duties specifically The duties of this position were different than a bodyguard who was with, for example, the mayor on a regular basis In this case specifically, the facts showed that the security specialist worked in an office separately from the mayor They were with the mayor when they were driving him to certain locations but they did not sit in and out of meetings with him They did not overhear conversations Specifically, what the testimony was that the mayor would either step out of the car or the mayor would be in the back and turn up the radio when he was listening to conversations and the majority of the security specialists worked in what are called advance or other functions where they were not in the car with the mayor specifically So in reality there was only one driver with the mayor as well as the commander and then the other security specialists would be driving and doing advance work or tail work and specifically when you're addressing the question of political loyalty In this case, political loyalty was not a requirement of this position and that can be seen by the fact that in this case eight members of Mayor Daley's team were forwarded on to Mayor Emanuel's team So it was not important specifically that the security specialists were loyal to the mayor so to speak but rather that they were qualified and able to protect the mayor in a position and held the qualities of a security member So is it your view that regarding the interim detail that it was inherently political for the defendants to say let's draw this interim team from the campaign volunteers I mean couldn't that decision have been a wholly practical one I mean the officers who volunteered in the campaign were already driving the mayor or elect around They knew him and of course this was going to be an interim detail for a few months Well with respect to the interim detail it was not practical to take volunteers who had been driving the mayor around for this interim detail because the detail did not A end up to be temporary but B Well they didn't know that at the time did they Not necessarily that's correct But the people that were chosen they knew nothing, the people who made the decision to select those officers knew nothing essentially about their qualifications other than the fact that they drove the mayor Well it was Gibbons from Daley's staff who made that suggestion I mean how in the world would that suggest a pro-Emanuel bias Well the problem with Gibbons' suggestion was that he suggested for Mr. Fahlman to select from solely a pool of volunteers So anyone else who would have wanted to be on that interim detail could not have been considered because they did not volunteer for Rahm Emanuel's campaign Under the Shackman Decrees any decision made must be considered by a relevant pool of candidates These individuals who were volunteering for Rahm Emanuel were in that pool solely because they volunteered and so anyone who was selected from that pool to be put on the interim team could only have been a volunteer You know you see even if the position I mean it seems to me that even if the position was not listed as Shackman exempt and was treated by the city and by Shackman monitors as non-political don't we have to independently assess the nature of the position as a First Amendment matter I don't know how much emphasis you know you should be putting on Shackman in this regard That's correct. The case law holds that you look at the ordinance of statutes in effect or you can look at the duties and the job description and so my position in this case and the briefs is that Shackman was another thing that we could have looked at but specifically if the duties are the issue then that should have been a genuine issue of material fact and the court should have let that go to the jury to examine whether the duties in the position were either confidential or required political loyalty but rather the court did not do that and they granted qualified immunity so we respectfully submit that that was an issue for the jury rather than an issue for the court to determine I do want to move on to the court's decision with respect to the actual Shackman claims themselves of the four plaintiffs and in that regard the Shackman decision was clearly erroneous because it's cited to improper facts and also made clearly erroneous legal conclusions namely the legal conclusion was made that Mr. Fallman selected what he called what the judge called the best of these individuals and there was no testimony in the Shackman portion of the trial that revealed that Mr. Fallman made any evaluation of the qualities of these individuals and Mr. Fallman specifically testified that he had no preferences as well as Mr. Emanuel, Mayor-elect Emanuel at that time, had no preferences now another way that the court was clearly erroneous was with respect to Superintendent Hillard and where it said that Superintendent Hillard did not use politics at all in coming to the decision to place these volunteers on any of the security details we had evidence at trial where Mr. Emanuel specifically admitted that he put an individual who was a volunteer named Francisco Gonzalez on the security detail both the interim detail and Mayor Emanuel's actual security detail based solely on the recommendation of Mr. Fallman who Mr. Hillard knew was a senior aide so this legal conclusion was clearly erroneous and it should lead to a decision in the plaintiff's favor now there was of course a second part to the case which involved the racial claims the equal protection claim that the plaintiffs brought and went to a jury trial in this case there were two significant errors that occurred during the jury trial which we submit requires a new trial on that claim the first of these errors occurred before trial and then ultimately during the trial when the court granted the defendant's motion in limine seeking to preclude evidence of a racial historical quota which plaintiffs submit was highly relevant and not unduly prejudicial in this case here we had, this is a rare case where we had undisputed evidence of a historical racial quota system in place where the defendants in this case benefited and participated in this practice and the jury did not hear this evidence in opening statement defendants counsel pointed to the historical practices of the detail showing the numbers of African Americans on the team of both Mayor Daley and of Mayor Emanuel but the plaintiffs were not allowed to show the racial historical quota system that led to these numbers being put in place specifically there was a commander named Commander Rody who would have testified that these details were set up so that there were two African American spots a quota system for African Americans on each team there was an A team and a B team and that when he submitted African Americans for those African American spots he was only considering African Americans specifically the testimony was that he actually kept a folder of African American resumes and he submitted African Americans solely based on the fact that they were African Americans and as to Mr. Hillard and Mr. Thompson the evidence was that Mr. Hillard testified that he submitted Mr. Thompson's name as a recommendation for the security detail after he was asked to submit the name of an African American and he did not know of any of Mr. Thompson's qualifications so this evidence was highly relevant and it was going to go to the plaintiff's theory of the case which went to the motive and intent specifically of these actors the plaintiffs were precluded from putting on this evidence and precluded from specifically pointing to the practice that took place in this case Well what about Hillard's testimony regarding the two and two practice? You used that in your closing argument I mean didn't his testimony help you make your point in that regard? Plaintiffs were allowed essentially to put on indirect evidence but we weren't allowed to paint the whole picture of what was going on You see such evidence always presents the danger of a mini trial over what happened in the past and that's very problematic Well the evidence here specifically was that this was a practice that continued we had evidence that Mr. Thompson labeled the four African Americans that he selected each of the African Americans who were on the daily detail and continued the practice of putting those four African Americans on the team without knowing the qualifications of at least two of them and so we were not allowed to complete the picture so to speak and show that this historical quota I mean it is a troublesome testimony You're correct Judge Like I said this is not something that we come across every day but for Terry Hillard to say we used two and two and for the plaintiffs not to be able to get into the practice that he was actually describing was an error and the court precluded us from entering that evidence in error Was there an objection during the closing argument? Well there was six specific times when we tried to enter this evidence and objected either during motions in limine and during opening statements and three different times during the testimony and we were shut down We tried to enter it through Commander Rohde's testimony and specifically asked the court to allow us to enter into that testimony after counsel opened the door We tried to get into it into Terry Hillard's testimony when he did testify about two and two and the court said essentially that's enough We've heard enough So it is troublesome but without the plaintiffs being able to show this practice we were unable essentially to show the motive and intent of the defendants here in putting these teams together and precluding the plaintiffs who are white and Hispanic from having the fair opportunity to be considered based on their qualifications rather than their race Now the second error that took place during the trial When did this security team start receiving higher pay than regular officers of the same rank? In this case specifically, if I understand your question correctly the new detail members, the volunteers received new pay starting in December of 2011 So approximately six months after they were put on the team and detailed, so to speak, to that position When the Shackman Decree included this detail as part of the protected area were the detail officers paid higher? They were paid out of grade and they received also overtime pay out of grade Then they had to submit certain slips So there was a pay differential by being on the detail? Yes Now to go back to the jury instruction The jury instruction, simply put presented the plaintiffs with a higher burden of persuasion than the law specifically allows The jury instruction in this case asserted that plaintiffs had to prove that they were demoted or removed from their positions because of race rather than the proper instruction which should have stated that plaintiffs were removed because the actions were motivated in part by the race You know, you may be right that the because of race language was incorrect in the context of the mixed motives instruction but it was followed by correct language in the second part of the instruction Did the defendants ever argue that race has to be the only reason not just a reason other than at that point? Certainly, in their closing argument specifically the defendants put up the first portion of the jury instruction They did not put up the part which contained the mixed motives language that you're referring to which said motivated in part and they raised it several times and said plaintiffs have to prove because of instead of motivated in part And how did you respond to that? We did in the rebuttal indicate that counsel neglected to show the second part of the language that said motivated in part but this was frankly confusing for the jury The jury would not have had any idea which standard was the correct standard Also, as you raised the second part of the language this contained what is called the mixed motives defense and it is undisputed in this case that the defendants never pleaded any mixed motives defense in this case Why does one need to plead that question? One doesn't plead law Well, the Garofalo decision in this case indicated that this is an affirmative defense Could you just explain why one would need to plead a legal issue? Just put the plaintiffs on notice that Notice is given by the pretrial order which establishes what the issues are for trial Are you contending that there was a deviation from the issues identified in the pretrial order? What I'm contending is That question can be answered yes or no No, I'm not Okay, thank you So, this mixed motives defense specifically It injured the plaintiffs and caused prejudice such that the plaintiffs did not know that they would have had to plead this and this was improperly included Briefly, I see my time is almost up I do want to address three of the plaintiffs Nolan, Olson, and Roman who were removed from this case in summary judgment and our argument is that these plaintiffs were specifically removed improperly because the court did not consider the actions of Commander Thompson in removing these plaintiffs and that those decisions could be imputed to Gary McCarthy who was the superintendent who essentially testified that he was just signing off on the orders of his subordinates So, at the end Thank you, Counselor Thank you Mr. Bryant Thank you and may it please the court This court should affirm the judgment of the district court This morning, I'd like to focus my comments on the district court's qualified immunity ruling and the district court's Shackman ruling unless this court has any questions regarding the trial the jury instructions, the evidentiary ruling and the McCarthy summary judgment ruling will rest in our brief absent any such questions So, what are we to make of the fact that the security specialty positions or position wasn't listed as Shackman exempt and the city indicated political considerations were not to be used in filling this position The only thing that can be made of that, Your Honor is that the position was protected under Shackman that if a proceeding, if a claim was brought pursuant to the procedures set forth in the Shackman Accord that if political considerations were taken into account for the security detail, then a Shackman claim could proceed But other than that, it doesn't extend anywhere into the 1983 context Nothing in the Shackman Decree says anything about the city agreeing that political considerations are inappropriate as a matter of basic First Amendment law It's only that the city, basically as a prophylactic measure for purposes of Shackman that the city will not consider political loyalties when staffing that position But as far as qualified immunity goes the Shackman Decree says nothing about whether a reasonable person could debate, whether it was beyond debate that the First Amendment protects the security specialist position And here it's quite clear both from the duties of the position and from the prevailing case law on the closest cases that we were able to find that the security detail, the question was debatable It was a debatable question, a reasonable person could question whether the security detail was a confidential position where the mayor or a similarly situated individual with such a security detail could expect political loyalties And that means it was debatable whether Shackman applied? It was debatable whether Shackman applied to those positions? That's actually also a debatable question for the purposes of the First Amendment for the purposes of Shackman in and of itself in a Shackman proceeding I don't think there's any debate that the security specialist was not Shackman exempt that a person pursuing a Shackman contempt claim could raise that issue But the question here is whether as a matter of First Amendment jurisprudence for a 1983 claim that it's beyond debate And it's simply not If anything, the precedent points the other way The Bailog decision, for instance Obviously it's not on all fours but this court has observed that it's particularly hard to find cases on all fours in this context which makes qualified immunity more important In Bailog, it was recognized that an individual with a close working relationship providing security and having access to confidential materials was a confidential employee who could be discharged for politically based reasons And that's about as close of a case as we could find here except perhaps the district court's decision in Green which also ruled that qualified immunity was appropriate for a similar security detail in Cook County And that makes good sense with the description of the position itself It's undisputed here that the security detail has access to the mayor's confidential thoughts It's not relevant whether or not the security detail shares an office with the mayor or sits in meetings That doesn't address the entire question It's whether they have access to those thoughts And it's undisputed here that they do They were able to overhear conversations such that Mayor Daley would have to get out of his car and leave if he didn't want his conversations to be overheard That just further shows that the detail had such access to confidential political thoughts Is the record going to tell us how many times Mayor Daley jumped out of the car? It will not But that was plaintiff's response to the city's presentation Does the record tell us whether the President of the United States jumps out of motorcades and stands by the side of the road to prevent the Secret Service agents from hearing? The record does not And I would hope that's not the case It's actually kind of absurd to hope to say that the security detail is not a confidential position because the protectee could just leave could just wander away and distance himself from the detail there to protect him I would honestly hope that the President doesn't run off I do know that the mayor was considered a runner when he was Chief of Staff He would run away from his detail as well at times in the record But again, it's not beyond reasonable debate here whether the detail is a confidential position And that's enough to satisfy qualified immunity And Shackman simply says nothing on that question You know, the plaintiffs in their reply brief suggest that Officer Hamilton's testimony was impeached to such an extent that he was not credible in asserting that he considered that he meaningfully, I guess, considered the qualifications for the people he recommended for the transition detail And you haven't had an opportunity to reply to that point because it came up in the reply That's correct, Your Honor So we would argue that that is waived That could have been brought up in the opening brief That was trial testimony There was no surprise The city didn't come out of nowhere It's no shock that Hamilton's testimony was a central point of the city's arguments in our response brief And nothing was said of that And even setting aside waiver the mere fact that Hamilton was impeached doesn't show clear error here The district court wasn't required to decide that Hamilton was not credible The district court could credit Hamilton's testimony And Hamilton testified at some length about the fact that he considered qualifications for the job That he was concerned about embarrassment of the mayor He was concerned about protecting the mayor He was concerned about qualifications of the individuals that he was recommending to Fahlman And Fahlman reviewed those recommendations And he believed that they were qualified as well And that's why he passed them on He said, if I thought they weren't qualified I would have had concerns So that in and of itself is enough to sustain the district court's Shackman findings here Hamilton and Fahlman identified job-related qualifications which is all that it takes to satisfy Shackman There's no dispute here that the qualifications that the volunteers on the mayor's campaign that the skills that they gained by being on that campaign were relevant job qualifications Plaintiffs seem to argue that these individuals should have just been dismissed out of hand because they are volunteers But that would be unlawful under Shackman Shackman actually prohibits that sort of discrimination against political volunteers who have job qualifications And significantly, plaintiffs have identified no person who had the particular job-related skills that these volunteers had They had worked with the mayor-elect Nobody on Mayor Daley's standing detail had that experience had that personal experience of working with, driving for, protecting Mayor Emanuel And that's enough to sustain the Shackman ruling there You know, I would like to talk to you about that mixed motive instruction because of race language in that instruction was wrong How did that happen? It seems to me that the plaintiffs had proposed a perfectly acceptable instruction on that point It's not clear how the instruction was crafted in that respect But there's no dispute here that the second clause as your honor noted the second clause of that instruction made quite clear that the burden shifted if race contributed that it did not have to be the only the sole thought that crossed So we have mixed messages going to the jury and the court about mixed motive I don't think so And plaintiffs themselves argued in their closing exactly how we're reading this instruction that this contributing to language at least twice the plaintiffs focused in their closing arguments that the contributing to language clarified, explained what that because meant And this court has been quite clear that perfect jury instructions aren't required that they just have to get the message across reasonably well And as the plaintiffs themselves explained to the jury that instruction was put across reasonably well that it was clear that race merely contributing to the decision was enough to shift the burden If this court has no further questions on the other issues raised we'll rest on our briefs for those And we respectfully request that you affirm the judgment of the district court Thank you, counsel Case is taken under advisement